IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SUZANNE FARROW; TRACY TREVILLYAN REVOCABLE TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNRA COFFEE, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 05-00715 HG-BMK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Suzanne Farrow ("Farrow") and Tracy Trevillyan Revocable Trust (collectively, "Plaintiffs") have moved for partial summary judgment as to Count One (Breach of Contract) of their Complaint. Plaintiffs contend that Defendant Sunra Coffee, LLC ("Sunra") breached an agreement to convey a certain parcel of property to them by March 31, 2005. Because the agreement unambiguously and unconditionally required Sunra to convey the property to Farrow by March 31, 2005 and Sunra did not do so, the Court holds that Sunra breached its contractual obligation to Farrow. The Court also holds that Plaintiffs' remedy for Sunra's breach is not limited to specific performance. Plaintiffs' Motion for Partial Summary Judgment is GRANTED.

1

**PROCEDURAL HISTORY**

On November 14, 2005, Plaintiffs filed their Complaint, a second lawsuit in the United States District Court for the District of Hawaii against Defendant concerning a parcel of ten acres of land on the island of Hawaii.

On June 1, 2006, Plaintiffs filed a motion for partial summary judgment ("Motion", Doc. 20) and a separate concise statement of facts in support. ("Plaintiffs' SCSF", Doc. 20.)

On July 6, 2006, Defendant filed a memorandum in opposition to Plaintiffs' motion for summary judgment. ("Opposition", Doc. 25.)

On July 14, 2006, Defendant filed a separate concise statement of facts in opposition to Plaintiffs' motion for partial summary judgment ("Defendant's SCSF", Doc. 27.)

On July 19, 2006, Plaintiffs filed their reply to Defendant's memorandum in opposition to Plaintiffs' motion for summary judgment. ("Reply", Doc. 29.)

On July 24, 2006, this matter came on for hearing. At the hearing, the Court granted Plaintiffs' Motion and held that Sunra breached its contractual obligation to convey the property to Farrow by March 31, 2005.

**BACKGROUND**

This case involves Sunra's alleged failure to convey a

2

certain parcel of land to Plaintiffs pursuant to an agreement
between the parties.  In 1991, Farrow became a limited partner in
a partnership entitled Keopuolani Estates Associates ("KEA")
which was formed to develop a 223.267 acre parcel of land located
in North Kona on the Island of Hawaii (the "Property").
(Complaint ¶ 6; Motion at Exhibit A, "Settlement Agreement",
dated February 15, 1995.)  A dispute arose between Farrow and the
partnership resulting in litigation which was resolved by a
Settlement Agreement, dated February 15, 1995, between Farrrow
and KEA.  In a previous action, this Court found the Settlement
Agreement to be binding on Sunra.  Sunra has a duty to perform
all obligations under the Settlement Agreement in good faith.
(Suzanne Farrow and the Tracy Trevillyan Revocable Trust v. Sunra
Coffee LLC, Civil Case No. 03-00121 SPK-BMK, Order Denying
Defendant's Motion for Summary Judgment and Granting Plaintiffs'
Motion for Summary Judgment, dated April 8, 2004.)

The Settlement Agreement obligates Sunra to deed a 10.1499
acre portion of the Property to Farrow.  (Settlement Agreement ¶
3.)  The Settlement Agreement refers to this 10.1499 acre parcel
to be conveyed out of the Property as the "Settlement Parcel"
(Id.)  The Settlement Agreement sets forth the conditions under
which Sunra is obligated to convey the Settlement Parcel by
providing that:

> in consideration of Farrow's agreement to assist
> [Sunra] as provided in Paragraph 4(a) hereinbelow,

3

and provided that [Sunra] is successful in
obtaining final subdivision approval from the
County of Hawaii and any other necessary
governmental agencies for [Sunra's] planned
subdivision . . . of the 223.267 Acre Parcel,
including obtaining permanent, qualifying, and
legal access to the 223.267 Acre Parcel . . . and
a sufficient number of water units for such
subdivision purposes, [Sunra] shall, within thirty
(30) days after receiving such final subdivision
approval, convey to Farrow, out of the 223.267
Acre Parcel, a parcel or parcels consisting of
approximately 10.1499 acres . . .

The Settlement Agreement required Farrow to survey the

Settlement Parcel:

Farrow agrees that, in connection with the
conveyance of the Settlement Parcel to Farrow,
Farrow shall, at no cost to [Sunra], commission
any necessary surveying and engineering work, file
any appropriate application(s), and obtain
approval of the County of Hawaii to the
consolidation of the Settlement Parcel with and as
part of former Lot A-1-A and/or Lot A-1-C-6, and
that the conveyance of the Settlement Parcel to
Farrow shall be contingent upon the consolidation
thereof with Lot A-1-A and/or Lot A-1-C-6.

Paragraph 4(a) of the Settlement Agreement obligates Farrow

to:

assist, cooperate, and actively support [Sunra] in
any negotiations between [Sunra] and the owners of
the privately-owned portion of Keopu Mauka Road
respecting any agreements that the Partnership
requires in order to obtain access over and across
the intersection . . . and for purposes of
approval by the County of Hawaii of, [Sunra's]
planned subdivision of the 223.267 Acre Parcel.
Farrow further agrees that Farrow will, as a
member of any association of owners in the Keopu
Mauka Subdivision, vote in favor of any [sic] all
such agreements to permit access over the
privately-owned Intersection of Keopu Mauka Road
for purposes of [Sunra's] planned subdivision of

4

the 223.267 Acre Parcel.

Over ten years have passed since the parties entered into the Settlement Agreement.  Sunra has not obtained subdivision approval from the County of Hawaii and has not conveyed the Settlement Parcel.

At some point, Sunra needed to bring heavy construction equipment onto a parcel owned by Farrow so that it could build a bridge providing access to its property.  Sunra negotiated with Farrow for a temporary right of ingress and egress over "the lower northwest portion of [Farrow's] Lot 2-B-1."  The agreement is memorialized in a letter, dated February 7, 2005 sent from Sunra to Farrow.  (Motion at Exhibit C, "Supplemental Agreement").  Farrow signed the letter indicating her acknowledgment and acceptance of the agreement set forth therein. In exchange for the temporary right of ingress and egress, Sunra agreed to arrange for a survey of the Settlement Parcel in accordance with the map in Exhibit D of the Settlement Agreement. The Supplemental Agreement also provides:

> Sunra Coffee LLC will convey the Settlement
> Parcel, approximately 10.1499 acres on or before
> <u>March 31, 2005</u>.  We will also provide Suzanne
> Farrow with the survey of the approximately
> 10.1499 acres.

(Supplemental Agreement ¶ 4; emphasis original.)

While Sunra does not allege that Farrow failed to fulfill her obligations under the Supplemental Agreement, it contends

that Farrow has failed to fulfill certain contingencies under the Settlement Agreement. (Defendant's SCSF ¶¶ 1-3.) Sunra has not conveyed the Settlement Parcel.  (Id. ¶ 4; Plaintiffs' SCSF ¶ 4.)

Plaintiffs' Complaint contains four counts:  Count One (Breach of Contract), Count Two (Breach of the Covenant of Good Faith and Fair Dealing), Count Three (Specific Performance), and Count Four (Declaratory Relief).

In their Motion, Plaintiffs move for summary judgment as to Sunra's liability for breach of the Supplemental Agreement (Count One).  Plaintiffs move this Court to find that they are entitled to damages because Sunra breached the Supplemental Agreement by failing to convey the Settlement Parcel by March 31, 2005.

Sunra argues as follows:

(1)  the Supplemental Agreement lacks material terms sufficient to make it, in and of itself, a valid and binding contract;

(2)  the Supplemental Agreement does not remove the contingencies in the original Settlement Agreement – *i.e.*, that Sunra first obtain final subdivision approval and Plaintiffs complete their consolidation of the Settlement Parcel with another parcel owned by Farrow;

(3)  the question of the effect of the Supplemental Agreement on the Settlement Agreement is a question of

6

fact inappropriate for summary judgment; and

(4)   the Settlement Agreement limits Plaintiffs' remedy to specific performance such that it cannot recover damages for Sunra's breach of the Supplemental Agreement.

(Defendant's SCSF ¶¶ 5-8.)

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party

7

must show, however, that there is no genuine issue of material
fact and that he or she is entitled to judgment as a matter of
law.  That burden is met simply by pointing out to the district
court that there is an absence of evidence to support the
nonmovant's case.  Id.

If the moving party meets its burden, then the opposing
party may not defeat a motion for summary judgment in the absence
of probative evidence tending to support its legal theory.
Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282
(9th Cir. 1979).  The opposing party must present admissible
evidence showing that there is a genuine issue for trial.  Fed.
R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d
1044, 1049 (9th Cir. 1995).  "If the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the
non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872
F.2d 319, 320 (9th Cir. 1989).

Opposition evidence may consist of declarations, admissions,
evidence obtained through discovery, and matters judicially
noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The
opposing party cannot, however, stand on its pleadings or simply
assert that it will be able to discredit the movant's evidence at

8

trial.  Fed. R. Civ. P. 56(e); <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.
The opposing party cannot rest on mere allegations or denials.
Fed. R. Civ. P. 56(e); <u>Gasaway v. Northwestern Mut. Life Ins.
Co.</u>, 26 F.3d 957, 959-60 (9th Cir. 1994).  Nor can the opposing
party rest on conclusory statements.  <u>National Steel Corp. v.
Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

<u>**ANALYSIS**</u>

I.  <u>**Legal Standards for Contract Interpretation**</u>

"[A]s a general rule, the construction and legal effect to
be given a contract is a question of law."  <u>Foundation Int'l,
Inc. v. E.T. Ige Const., Inc</u>., 78 P.3d 23, 30-31 (Haw. 2003)
(citation and quotations omitted).  "Absent an ambiguity, [the]
contract terms should be interpreted according to their plain,
ordinary, and accepted sense in common speech."  <u>Id</u>. at 31
(citation and quotations omitted).  "[T]he determination of
whether a contract is ambiguous is also a question of law."  <u>Id</u>.
at 32 (citation omitted).

"To determine whether ambiguity exists" Hawaii courts do not
necessarily look for "particular ambiguous words or phrases";
rather, the courts consider "'whether or not particular words or
phrases in themselves be uncertain or doubtful in meaning.'"  <u>Id</u>.
at 32-33 (quoting <u>Hokama v. Relinc Corp.</u>, 559 P.2d 279, 282 (Haw.
1977) (quoting <u>Bishop Est. Trust v. Castle & Cooke, Inc.</u>, 368
P.2d 887, 894 (Haw. 1962)).  A "'court should look no further

9

than the four corners of the document to determine whether an ambiguity exists.'" Id. at 33 (quoting State Farm Fire & Cas. Co. v. Pacific Rent-All, Inc., 978 P.2d 753, 762 (Haw. 1999) (citing KL Group v. Case, Kay & Lynch, 829 F.2d 909, 916 (9th Cir. 1987)). A contract term or phrase is ambiguous only if it is capable of being reasonably understood in more than one way. Wittig v. Allianz, A.G., __ P.3d __, 2006 WL 1731142, at *6 (Haw. App. July 3, 2006). "'[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous.'" Foundation Int'l, Inc., 78 P.3d at 33 (citing State Farm Mut. Auto. Ins. Co. v. Fermahin, 836 P.2d 1074, 1077 (Haw. 1992); Hawaiian Ins. & Guar. Co. v. Chief Clerk of the First Circuit Court, 713 P.2d 427, 431 (Haw. 1986)).

"When an ambiguity exists so that there is some doubt as to the intent of the parties, intent is a question for the trier of fact." Foundation Int'l, Inc., 78 P.3d at 33. In the absence of any ambiguity, a question of construction arising upon the face of the instrument is for the court to decide. Id. Under the parol evidence rule, the court may not resort to extrinsic evidence to determine the parties' intent where the contract's language is unambiguous. Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 839 P.2d 10, 31 (Haw. 1992).

II. **The Supplemental Agreement Is a Valid and Enforceable Modification of the Settlement Agreement**

There must be mutual assent or a meeting of the minds on

10

all essential elements or terms to create a binding contract.
See Earl M. Jorgensen Co. v. Mark Construction, Inc., 540 P.2d
978, 982 (Haw. 1975).   The existence of mutual assent or intent
to accept is determined by an objective standard.   Id. (finding
it clear from undisputed facts that party's submission of
purchase order was a manifestation of intent to accept offer).
The letter from Sunra to Farrow was an offer and Farrow's signing
of the letter was an acceptance.   There was mutual assent as to
the terms of the Supplemental Agreement.

Sunra argues that the Supplemental Agreement fails for lack
of consideration because under the terms of the original
Settlement Agreement Farrow had certain obligations to cooperate
with Sunra in obtaining subdivision approval.   (Opposition at
15.)   "Sunra's position is Farrow was already obligated to
provide Sunra the access discussed in the Supplemental
Agreement."   (Id.)

"It is well-settled that consideration is an essential
element of, and is necessary to the enforceability or validity
of, a contract."   Shanghai Inv. Co., Inc. v. Alteka Co., Ltd.,
993 P.2d 516, 530 (Haw. 2000).   "Consideration is defined as a
bargained for exchange whereby the promisor receives some benefit
or the promisee suffers a detriment."   Id. (citing Gibson v.
Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1130 (7th Cir.
1997) (further citations omitted).   "A modification of a contract
must be supported by new consideration."   Id.  (citing Honolulu

<u>Federal Savings and Loan Assn. v. Murphy</u>, 753 P.2d 807, 813 (Haw. App. 1988) (further citations omitted).

In the Supplemental Agreement, Farrow granted Sunra a temporary access easement over a specific portion of her property.  In exchange, Sunra agreed to survey the Settlement Parcel and convey it to Farrow on or before March 31, 2005. While the Settlement Agreement obligated Farrow to cooperate with Sunra to obtain access over the privately-owned intersection of Keopu Mauka Road, the Settlement Agreement did not specifically obligate Farrow to provide access over Lot 2-B-1 of her property as provided in the Supplemental Agreement.  Similarly, prior to the Supplemental Agreement Sunra was not obligated to convey the Settlement Parcel until certain contingencies were satisfied. Sunra and Farrow's mutual reciprocal promises constitute sufficient new consideration for the Supplemental Agreement.  <u>See</u> <u>Guaschino v. Eucalyptus, Inc.</u>, 658 P.2d 888, 895-96 (Haw. App. 1983)("Mutual reciprocal promises constitute good and sufficient consideration").

The Court next turns to the issue of the effect of the Supplemental Agreement on the Settlement Agreement.  Hawaii law regarding modification of an existing agreement is clear.  Under Hawaii law, "[a] modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed." <u>Shanghai Inv. Co., Inc.</u>, 993 P.2d at 531

12

(quoting Int'l Business Lists, Inc. v. American Tel. and Tel. Co., 147 F.3d 636, 641 (7th Cir. 1998).) "The original contract generally remains in force except as modified or superseded by the new agreement." Id. (quoting Scott v. Majors, 980 P.2d 214, 218 (Utah App. 1999) (citation and emphasis omitted)) (citing Thompson v. Gjivoje, 896 F.2d 716 (2nd Cir. 1990) ("[t]he modification of a contract results in the establishment of a new agreement between the parties which pro tanto supplants the affected provisions of the original agreement, while leaving the balance of it intact") (citations omitted).)

In Create 21 Chuo, Inc. v. Southwest Slopes, Inc., 918 P.2d 1168, 1182 (Haw. App. 1996), the trial court instructed the jury as to the law of contract modification:  "When two contracts between the same parties are only partly inconsistent, the earlier contract is superseded only to the extent of the modification or inconsistency.  The consistent or unmodified portion will continue in effect."  While contract modification is a jury question when there is a genuine issue of material fact, where, as here, the extent that the prior contract has been modified is clear from the parties' legal writings, the Court can determine, as a matter of law, the effect of the modification on the original agreement.  See Thompson, 896 F.2d at 721-22 (district court correctly found that there was no genuine issue of triable fact with respect to plaintiffs' claim for commissions where argument that plaintiffs were entitled to commissions was

unsupported by any reasonable reading of the two contracts); Scott, 980 P.2d at 218 ("Under any interpretation of these facts, Scott did not repudiate the contract but merely tried to resolve unresolved issues thereunder. We hold that Scott's proposal was an offer to modify the original contract which Majors rejected, leaving the original contract in full force."); Wheco Corp. v. Ross Bros. & Co., Inc., 2005 WL 1300150, at *3 (Wash. App. Div. 3, May 24, 2005) (unpublished) ("The trial court correctly concluded that this transaction was controlled by the December 28, 2000 agreement and that additional terms on the back of the form that was presented on-site constituted a modification of the agreement that was neither bargained for nor supported by consideration. These are not disputed questions of fact; they are questions of law based on undisputed facts.").

The Supplemental Agreement is a valid and enforceable modification of the Settlement Agreement. While Plaintiffs argue that the Supplemental Agreement is a new and wholly independent agreement, the language of the agreement itself does not support such a construction. The Supplemental Agreement is between the same parties and involves the same subject matter as the Settlement Agreement. The Supplemental Agreement also specifically refers to the Settlement Agreement and uses certain terms defined therein.

The extent to which the Supplemental Agreement modified the Settlement Agreement is clear. The unambiguous language of the

14

Supplemental Agreement modified the Settlement Agreement to the extent that it unconditionally required Sunra to convey the Settlement Parcel to Farrow by March 31, 2005.  In light of the clear language of the Supplemental Agreement, requiring Sunra to *unconditionally* convey the Settlement Parcel, the Plaintiffs need not complete consolidation of the Settlement Parcel with another parcel prior to conveyance.  The Court also rejects Sunra's argument that, despite its express obligation to convey the Settlement Parcel by a date certain, it was still not bound to convey the Settlement Parcel until it obtained subdivision approval.  Although Sunra cannot convey the Settlement Parcel until it obtains subdivision approval, as discussed further below, in exchange for temporary access over a portion of Farrow's property Sunra accepted the risk of being unable to convey the property to Farrow by March 31, 2005.

The Supplemental Agreement also modified the Settlement Agreement by requiring Sunra to perform the survey for the Settlement Parcel.  All other consistent terms of the Settlement Agreement continue in effect.  Sunra remains obligated to obtain subdivision approval so that it can convey the Settlement Parcel to Farrow as it is required to do under both the Settlement Agreement and the Supplemental Agreement.

III. **The Defense of Legal Impossibility Does Not Apply**

Sunra suggests a defense of legal impossibility because under Hawaii County regulations land cannot be sold "until

15

approval for recordation of the final plat is granted by the director."  Hawaii County Code § 23-76.  Sunra cannot avail itself of the defense of legal impossibility under the facts present here.

In Warner v. Denis, 933 P.2d 1372 (Haw. App. 1997), the court considered the applicability of the defense of legal impossibility under circumstances analogous to those present here and found that it did not apply.  In Warner, prospective purchasers of real property brought a breach of contract action against the seller after the seller failed to perform under a contract to sell the property.  The property was owned by a husband and wife.  The wife claimed that she did not authorize her husband to sell her half of the property.  Id. at 1381.  The seller argued impossibility in defense of the prospective purchasers' breach of contract claim.  The court noted that "[o]rdinarily, a person is not relieved of liability for breach of a promise to sell property simply because he or she turns out not to have marketable title."  Id. (citation and quotation omitted).  The court quoted the well established proposition that "when a party promises to do a thing which becomes impossible by contingencies which should have been foreseen and provided against, . . . such impossibility is no defense to an action for a breach of a contract. . . . A promisor is not absolved from performance by the neglect or omission of some person upon whom he had depended for such performance.  The performance of an

absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance." Id. (citation omitted).

The Warner court thus found that the seller's performance was not excused by his wife's refusal to join in the conveyance. Id. at 1382.  The court reasoned that when the seller signed the contract to sell with the prospective purchasers he knew that he would need his wife's consent in order to convey marketable title.  Id.  Although the seller's wife's failure to consent to the sale rendered it impossible for the prospective purchasers to obtain specific performance it did not shield the seller from liability for damages.  Id.

Here, Sunra knew of the subdivision approval contingency at the time it entered into the Supplemental Agreement.  Even assuming, for purposes of this Motion, that Sunra acted in good faith to expeditiously obtain subdivision approval, the fact that Sunra was unable to obtain subdivision approval by March 31, 2005, does not relieve it from liability for breach of the Supplemental Agreement.  Sunra assumed the foreseeable risk that it would not obtain subdivision approval by the time set forth in the Supplemental Agreement.

Sunra has also not submitted admissible evidence that would support an impossibility defense, such as declarations from, or depositions of, the County.  Sunra has submitted a Declaration of Sidney Fuke, who has been serving as Sunra's private land use

17

consultant in obtaining subdivision approval from the County. Mr. Fuke's statements fail to show that Sunra could not have somehow foreseen a delay in obtaining subdivision approval.  To the contrary, Mr. Fuke's speculation about the severe understaffing in the County of Hawaii's Planning Department shows that Sunra should have foreseen that it may not have been able to obtain subdivision approval by March 31, 2005.

The Hawaii Supreme Court's decision in <u>Leslie v. Board of Appeals of the County of Hawaii</u>, 126 P.3d 1071 (Haw. 2006) also did not give rise to an unforseeable risk so as to excuse Sunra's performance under the Supplemental Agreement.  In <u>Leslie</u>, the Hawaii Supreme Court affirmed the lower court's decision holding that the County planning director lacked discretion to accept a subdivision application without strict compliance with county code regulations.  In particular, the court ordered that the County planning director require the developer to apply for and obtain a special management area use permit, as mandated by state and county regulation[1], prior to granting tentative approval of the developer's proposed subdivision.  <u>Id</u>. at 1077.

The <u>Leslie</u> court interpreted and applied existing land use regulations of which Sunra was, or should have been, aware. Indeed, not only should Sunra have been aware of the existing

_____

[1]  Haw. Rev. Stat. § 205A-28 provides:  "No development shall be allowed in any county within the special management area without obtaining a [special management area] permit."  <u>See</u> County of Hawaii Planning Commission Rule 9-8.

18

land use regulations, but the <u>Leslie</u> decision was not a surprise.
The lower court issued its decision in <u>Leslie</u> in November 2003
before Sunra agreed in the February 7, 2005 Supplemental
Agreement to convey the Settlement Parcel by March 31, 2005.

Moreover, even assuming that the need for strict compliance
with county code regulations was somehow not foreseeable, Sunra
has not presented any evidence as to how the <u>Leslie</u> court's
decision requiring strict code compliance has impacted its
ability to obtain subdivision approval.  Sunra does not present
evidence as to whether or when it submitted the information
required by the county land use regulations at issue in <u>Leslie</u> or
that, after <u>Leslie</u>, the County required it to provide additional
information or apply for additional permits.

Sunra's legal impossibility defense is without merit.  The
Court finds that Sunra breached the Settlement Agreement, as
modified by the Supplemental Agreement, because it did not convey
the Settlement Parcel by March 31, 2005.

**IV.  <u>Plaintiffs' Remedy for Breach of Sunra's Obligation to Convey
the Settlement Parcel By March 31, 2005 Is Not Limited to
Specific Performance</u>**

"It is a basic principle of contract law 'that the promisor
is ordinarily bound to perform his [or her] agreement according
to its terms or, if he [or she] unjustifiably fails to perform,
to respond in damages for his [or her] breach of the contract."
<u>Warner</u>, 933 P.2d at 1381.  That said, parties may contractually

limit their remedies.   Sections 8(d) of the Settlement Agreement limits the parties' remedy for breach of the Settlement Agreement to specific performance.   The Supplemental Agreement does not contain a provision regarding available remedies for breach. Nor does it reference or incorporate the limitation of remedies provision in Section 8(d) of the Settlement Agreement.

Specific performance is not an available remedy for breach of Sunra's obligation to convey the Settlement Parcel by March 31, 2005.   Because the Settlement Parcel has not yet been subdivided, it cannot be conveyed to Plaintiffs.   If the Court were to find that the limitation of remedies provision applies to Sunra's obligation to convey the Settlement Parcel by March 31, 2005, Plaintiffs would be without a remedy for Sunra's breach.

Under the general principals governing contract modification, the consistent or unmodified portion of the original agreement continues in effect while the modification supersedes conflicting provisions.   The limitation of remedies provision implicitly conflicts with Sunra's unconditional obligation under the Supplemental Agreement to convey the Settlement Parcel by a date certain since without satisfaction of the contingency pertaining to subdivision approval, specific performance is not an available remedy.

Moreover, the limitation of remedies provision fails its essential purpose.   "'A limited remedy fails its essential purpose when the circumstances existing at the time of the

agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all.'" Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc., 319 F. Supp. 2d 1040, 1055 (C.D. Cal. 2003) (quoting Computerized Radiological Servs., Inc. v. Syntex Corp., 595 F. Supp. 1495, 1510 (E.D.N.Y. 1984), *rev'd in part on other grounds*, 786 F.2d 72 (2nd Cir. 1986)). That is exactly the case here. Specific performance is not an available remedy unless and until Sunra obtains subdivision approval, but the modification to the Settlement Agreement obligated Sunra to convey the Settlement Parcel by March 31, 2005, regardless of whether it had obtained subdivision approval. Application of the limitation of remedies provision under the facts present here would essentially leave Plaintiffs with no remedy at all.

The Court finds that the limitation of remedies provision in Section 8(d) of the Settlement Agreement does not apply to limit Plaintiffs' remedy for Sunra's breach of its obligation to convey the Settlement Parcel by March 31, 2005 to specific performance. Plaintiffs, however, have not identified the type of damages they seek for Sunra's breach. The Court does not, at this time, reach the issue of the type, or amount, of damages available for Sunra's breach. Plaintiffs' proof of damages is an issue for the trier of fact.

## CONCLUSION

Sunra breached the Settlement Agreement, as modified by the

Supplemental Agreement, because it did not convey the Settlement
Parcel by March 31, 2005.  The limitation of remedies provision
in Section 8(d) of the Settlement Agreement does not apply to
limit Plaintiffs' remedy for Sunra's breach of its obligation to
convey the Settlement Parcel by March 31, 2005 to specific
performance.

    For the foregoing reasons,

    Plaintiffs' Motion for Partial Summary Judgment (Doc. 20),
as to liability for Count One (Breach of Contract) is **GRANTED**.
The amount of damages remains to be proven.

    IT IS SO ORDERED.

    DATED:  Honolulu, Hawaii, October 6, 2006.



                        **/s/ Helen Gillmor**
                        Chief United States District Judge

---

Suzanne Farrow, et al. v. Sunra Coffee LLC; Civil No. 05-00715
HG-BMK; ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT